Thank you, your honor. May it please the court and my friend Mrs. Quinn. My name is Ron Parsons appearing on behalf of the United States. The subtext of this case is filled with moral, but this case is about statutory text, not subtext. And we're dealing with a question of law, not philosophy. The United States suggests that the strict question of law in this case is not complex and that the text of the controlling statute Congress enacted is plain and without ambiguity. The controlling term has been expressly defined by Congress. There is broad agreement that this court's role is to apply the plain meaning of the statutory text. And when it does that, we suggest that this court will conclude that the indictment charged a crime, as defined by Congress, involuntary manslaughter by the poisoning and unintentional killing of a Native American child born in a hospital in Sisseton, South Dakota, who we know as Baby Boy Flute. Samantha Flute was charged with involuntary manslaughter under 18 U.S.C. 1112. She was past her ninth month of pregnancy. The baby was fully formed at 38 weeks inside the womb. She snorted lines of hydrocodone, took three lorazepam pills, and downed cough medicine shortly before giving birth in order to get high, admitting she knew it was bad for the child, but she needed to get high. She gave birth to the boy, who lived for four hours, and then died from the resulting drug toxicity, according to the forensic pathologist who did the autopsy. Counsel, I want to ask you a factual question about, a procedural question about what's before us. Specifically, there's a subtext to the argument made by opposing counsel that perhaps, you know, if you look back historically about the Born Alive Rule and the common law basis for the Born Alive Rule, there seems to be some jurisdictions, a lot of jurisdictions that have a common law immunity for the mother. And I'm wondering whether that's before us or whether that's something that would need to be sent back on remand. No, I don't think it's before you. I think this is controlled entirely by the statutory text. But the state of the common law, as it existed when the voluntary manslaughter statute was adopted, going back to Koch and Blackstone, specifically stated that if a woman would poison her child and, or by potion, administer a potion that affects the child and the child dies in the womb, that is not a homicide. But if the child is born alive, it surely is. And that was the state of the common law. And I think that's the law that was adopted in 2002, codified by the United States Congress. I see. And so the text, the definition of human being as someone born alive, codifies what was the traditional common law rule going back to centuries, 600 years. The briefs didn't really get into the English common law. That's right. I wondered why, since that seems to be a premise of your argument, that the statute adopted the common law rule, but we have no briefing on what the common law was and whether there was a difference between a third party and a mother when it comes to. I understand the quote from Cook, but do you know of any English common law case in which the Cook rule was applied? Do you know how the English common law developed between Cook's treatise and the 17th and 18th, 19th centuries? Have you studied that? I've studied it to some degree. It's set forth in the Forsyth article that Judge Kornman cited. But we're not relying on the common law. We're relying on the statutory text adopted by Congress and its plain meaning. I thought you were saying that the statute adopted the common law. You're now suggesting that maybe the statute modified the common law, or it doesn't matter what the common law meant because the statute would have modified the common law if there was a common law distinction between mother and third party. What's the basis for that? Well, there is no federal common law in this area. It's entirely a criminal, is entirely controlled by statutory text. And so the text defines a human being in 1 U.S.C. 8 as any person at whatever stage of development who was born alive. So that text includes baby boy Flute because he was born alive. Therefore, under the plain meaning of the text, the killing of him by lawful means done in an unlawful manner using gross negligence and recklessness constitutes by the plain text voluntary manslaughter as charged. It's a crime. We still have to prove it when we go to trial if the court reverses. But there's no doubt that charges a crime in my view under the plain language of the text. And I think what Judge Carlton may be asking, and certainly I'm wondering. So even if he wasn't asking, I'm wondering about it is nothing addresses the mother. The only thing that addresses the mother is, as Judge Korman talks about, that 2004 act that says nothing in the section. I agree. It applies only to this section. But then what do we look at to figure out how to treat the mother? Maybe we go back and we look at the common law and then we've got to figure out what the common law was as to how to treat the mother. And I'm just wondering what your response is to that. Yeah, I think that's true. That's one thing you can do is go back and look at the common law to see what's reasonable for Congress to have done. But ultimately, I think it's controlled by what the text says. And the text applies to any human being. And it's not focused. It applies to any person who commits the act. So the class of persons that was designed to protect the manslaughter law is any human being born alive. And the class of defendants it's designed to punish are anyone who commits the acts described in the statute. So I don't think this dividing up into classes, defendants up into classes, has a statutory basis in the voluntary manslaughter law. It applies to anyone who commits these acts. And I suppose to the extent there's a defense or an immunity, some sort of common law immunity, that's something that given the fact that we haven't seen a lot of that in the briefing, that's something I would assume that could be decided on remand if she wanted to interpose a defense. I don't think a common law immunity would abrogate the text or affect the text. Well, what if the text incorporated the common law rule? You rely on the Spencer case, of course, from the Ninth Circuit. And the Spencer case itself said, in view of Congress's intent to reflect the state and common law definition of murder, they conclude that, at least in a third party case, the born alive rule applies. So what do we do if the common law turns out to distinguish between the third party and the mother? Why do you say the statute wouldn't reflect that distinction? Because the text doesn't make that distinction, is my only answer, Your Honor. The text doesn't carve it out that way. The text tells us anyone born alive is subject to being protected by law under this statute. On that view, then, there really wouldn't be any defense on remand. You're saying even if there were a common law immunity or common law distinction between third party and mother, I think what you're saying is Congress superseded that and eliminated it. That's right. That's my belief. So we would have to decide now whether we think that distinction is built into the statute. Yes. That's your view? That is. That would be your position on remand? That is, Your Honor. I think the remand would just reinstate the indictment, and we go to the facts, go to the proof, and go to trial. So what is it about the text that you think informs this question? Well, the manslaughter statute itself is simply the unlawful killing of a human being without malice. Does unlawful bring in the common law, possibly, the word unlawful? In order to figure out what they meant by unlawful, do we look to the common law or not? In this case, no, because we're talking about involuntary manslaughter, and there it's defined in the commission of an unlawful act not amounting to a felony, or as we've charged in the commission in an unlawful manner without due caution and circumspection, of a lawful act which might produce death. And so the lawful act that was done here was the ingestion of prescription medications and over-the-counter medications in kind of a drug cocktail that was taken. But it was done in an unlawful act. The lawful act can refer to the act itself, I suppose, and the unlawful point could refer to incorporating or bringing in some of those common law immunities and common law concepts. Am I wrong about that? It could, I suppose, but I interpret it as being in an unlawful manner, being that she took three times the daily prescribed dose of lorazepam and snorted in excess of what she was prescribed in hydrocodone. So it was done in an unlawful manner, but it caused death, and she admitted that she knew it could harm the child, and so it was grossly negligent, reckless, without due circumspection. So I think that's as far as you go there. I don't think you go to the common law is my view. Of course, if the court disagrees, that's where we'll go. But I think the court can start and end with the text in this case. Okay. That's a little different rationale, arguably, than Spencer. Yes. Yeah. And Spencer was the case identified by Judge Corman where he said, yeah, this clearly was something that was intended to be prosecuted under the common law. He said that, but I don't know if he really analyzed the common law. No. The briefs don't really analyze it. And he didn't rely on it. He relied on the 2004 statute, the Lacey and Connors law. Right. The later statutes were important, but so far we've just been talking about, I suppose, what the statute meant in 1908. Right. Yeah. The later statute changed nothing in this case because it was clearly intended to the born alive rule, whatever you want to call it, the codification of the definition of a human being in Section 8 established a baseline level of protection that at least there will be this type of protection for anyone born alive, any human being at any stage of development born alive. In 2004, another area was carved out with the Lacey and Connors Act that said that, well, if you kill or injure an unborn child in the mother's womb, and if it's done by a third party who's not authorized by law to do anything to it. So it carved out additional protection. It didn't do anything to restrict who could be charged under the involuntary manslaughter statute, and it didn't do anything to restrict the otherwise applicable definition of human being that governs all other federal statutes with the exception of this new act. With respect to the 2002 act, the Federal Definition Act change, or the Federal Definition Statute, did that, in your view, in the United States' view, did the born alive rule exist in the 1908 statute and to the 2002 definition merely reaffirm what we already knew, or did the 2002 statute, the change in the definition, actually change the law or do something with respect to the law? I think it codified what it meant. It made Congress' intent expressed. Whatever Congress' intent was in 1905, or when the voluntary manslaughter statute was passed, now in 2002 everyone's on notice this is exactly what is meant by human being in every federal statute, including the manslaughter statute, and it's anyone born alive. And so I think it's whether or not in 1905 this conduct was part of the common law when the involuntary manslaughter statute was passed ultimately is not controlling because what controls is what Congress defined in the 2002 statute. One other question that I have that's bothering me is what about our Montgomery case? I know the parties have talked about that. That's the one with the kidnapping. And we just flat out say in that opinion that under the law a fetus is not a human being, period, the end. And here are the acts that caused the damage to the fetus, which eventually led to the child's death under the born alive rule, if it applies, occurred while we didn't have a human being. And so is there any significance to the Montgomery case in your view and how would you propose we get around that? I think it assists our argument in this case because what Judge Wallman explained in Montgomery was that the statute defines the term unborn child and limits its definition to 1841. It limits its definition to the separate offense created by the Lacey and Connors Act. And because that definition of unborn child only applies to that act, the regular definition in Section 8 of human being or person applies to the kidnapping statute. And so because the victim in the Montgomery was not born alive, that definition didn't apply. The kidnapping statute didn't apply for that reason. The court proceeded to find it applied for another reason. Results, yeah. So I would revert. Go ahead. Did you just say a minute ago that you think even if the common law rule was incorporated into the 1905 statute or 1908 statute and that it was narrower or distinguished between mother and third party, that you think the 2002 statute changed the meaning? I thought you said it doesn't matter what was in the 1908 statute because we have the 02 statute. But I thought your position had been earlier in the briefs that the later statutes didn't affect the meaning. I think that's true. Which is true? It's true that it doesn't. Why don't you add five more minutes to the clock? Go ahead. It doesn't matter what the ultimately, I think, what the common law said or meant in 1905 because the text of the involuntary manslaughter statute applies in that case. And under the plain language of that text. Okay. I understood that point. I thought you were just a minute ago making a different point about the 02 statute. Well, it made it even more explicit. I think it ratified the same thing. It made it more explicit. It said this is the statutory definition of a human being, anyone born alive. That text wasn't in the voluntary manslaughter statute. I suggest that was the effect of the meaning of that textual language even in the 1900s. But by 2002, we know for certain, with certainty, that a human being born alive is, if they're killed, that's involuntary manslaughter if we can prove it at trial. Do you know of any precedent for this sort of prosecution in federal court? Has any other U.S. attorney brought this kind of case that's unreported or that we might not know about? I'm not aware of any. The Jumper case was the closest that we could find, and that wasn't drugs that were ingested. It was an attempted home birth where involuntary manslaughter conviction was affirmed because a woman very recklessly attempted to give birth at home and then did not call the doctor after the baby was born. The baby was born alive and died. That's not very approximate, but that's the closest case we could find. The reason, I think, is because normally involuntary manslaughter is not a federal crime. It's almost always a state crime. Here it's different because this is Indian country under federal jurisdiction. Did you find, let's see, there are some state cases, but a lot of them are under child endangerment statutes. Did you find any manslaughter case in a state that you think is helpful? I'm thinking the two cases that I'm thinking of are the Indiana case, which is the Shway case, and the South Carolina case. Starts with a W. South Carolina. What did the courts say in those cases? The Shway case, I think it recognized the born alive rule in the manslaughter context, I believe. Was it with a mother defendant or a third party? It was a mother defendant. Then the other was State v. McKnight, South Carolina. They're not totally on point because in these cases, these state law cases depend on, there are statutory definitions of person and human being, and sometimes the terms are different in child endangerment acts and manslaughter statutes. But I don't want to represent that Shway and McKnight are directly on point. But those were the two cases that seemed closest to the principles that we're relying on. Was cited in your brief? I don't believe so. Why don't you send us a 28-J letter with the citations so we're sure to have them if you would, please. I will do that. Thank you, Your Honor. All right. Thank you, Mr. Parsons. Ms. Quinn, we'll hear from you. Why don't you put 20 minutes on the clock so everybody has the same amount of time. Thank you. May it please the Court. My name is Molly Quinn. I represent the appellee, Samantha Flute. We're asking the Court to affirm the order dismissing the indictment against Ms. Flute. The involuntary manslaughter statute does not apply to a mother's prenatal conduct with respect to her unborn child, even if the child is born alive and dies after birth. The involuntary manslaughter statute prohibits the unlawful killing of a human being. Congress has defined human being as a person who is born alive at any stage of development. Ms. Flute's alleged conduct was all before the baby's birth. It was not against a human being at the time. The involuntary manslaughter statute should be read to require a human being victim at all stages of the offense, at the time of the act or the conduct, as well as at the time of death. Counsel, that's been your argument. From what I can tell, that's been the argument throughout. It's the argument that Judge Kornman addressed. And what I'm really, really struggling with is the suggestion in your brief about the common law immunity. It really wasn't necessarily developed. I'm trying to figure out where that fits in because, you know, at least in state court, and I'm not sure if this is the federal rule, but I assume it is, even immunities have to be raised by the party claiming the immunity. And so if it's not before us, you know, is that particular question, to the extent that there's a separate sort of extra statutory immunity or something like that, is that something that's before us in your view or not? Our position is that there really isn't a role for the common law born alive rule. Our position is that if you have to go all the way back to the common law born alive rule, the government has never shown and no case has applied it to a mother's prenatal conduct. But our position is that we're now in a situation where there's a statutory definition of human being that did not codify the born alive rule, at least as it was articulated in the Spencer case, as to the definition of a human being. And even if you... What statute are you talking about when you say there's now a statute? Which of the statutes do you mean? I'm talking about 1 U.S.C. Section 8, the definition of human being, covering any infant or human who has been born alive at any stage of development. So I'm hearing you reaffirm my view, which is this to you, to the defendant here, this is a statutory case, and I think that's the way the district court also treated it. Am I right about that? Yes. Okay. I think the common law comes into play because I think the piece that is missing from the government's position is that they have to prove that Ms. Flute or a woman based on her prenatal conduct could ever have been charged under this statute at any point. There's some arguments in the brief about, well, a later statute didn't take away that ability, but I think the piece that's missing and that we don't think exists is that there's ever been an ability under this federal statute to charge a woman with respect to her prenatal conduct. Do you get that from the O2 statute as opposed to the manslaughter statute? Right. You say never. That means even before 2002. That's correct. We would take that position. We're not saying that she's immune from liability. We're saying that federal courts have never adopted a theory of liability for a mother's prenatal conduct. The only articulation of the born-alive rule that we can find in federal cases relates to a third party's conduct. So you would distinguish? You think the statute does encompass third-party conduct like in Spencer, but it doesn't go to the mother? Is that your position, or are you saying you think Spencer is wrong? Spencer was the law at the time. Our position is that now the definition of human being tells us what a human being is. The Spencer case was using the born-alive rule to tell us that human being included a child who had been born alive but died as a result of prenatal injuries. And so now the conduct by a third party, is that covered? So say instead of the drug, you know, CARM, say somebody comes in and punches the mother here. Is that third-party liable and the baby dies after being born? Is the third party liable under the statute as it exists now? No, not under the statute. And we don't have to resolve the case for all third parties everywhere. But I know, Judge Chaucey, you weren't interested in looking at 1841, but I think 1841, even though it's not the statute charged here and it doesn't provide a statutory defense to this prosecution, Congress made clear in 1841 that they're not just kind of patchworking liability for a baby who is injured or dies in utero. They're, as the committee report says, they're dismantling, eliminating, and replacing the born-alive rule. So our position is that as we stand here today, we don't believe that a woman could ever have been prosecuted in a United States court and a federal court based on her prenatal conduct that resulted in the death of a later-born child, that federal courts have never adopted any statement of the common law born-alive rule that incorporates that type of liability. Also, there's a definition of human being that does not. And then now we're in a post-2004 world where Congress has said, we don't like what the common law born-alive rule did. The common trend is to abolish that rule. We're going to follow that trend. We're going to eliminate it and replace it with this definition. So your argument really requires, I mean, it's not a circuit case, but the implication of your position is Spencer's wrong. I mean, at least post-2004, Spencer is wrong. Right, that there is no rule for Spencer in the born-alive rule in this case because we're now in a statutory world where human being is defined by statute as covering, as applying only after birth. Why does that eliminate the born-alive rule? I mean, the born-alive rule was based on the idea that you had to have a human being who was independent of the mother, right, in order to have a crime. But we have that here, and we had that in Spencer. I don't understand why you think Section 8 eliminates the born-alive rule. I think that Section 8 sets, it's starting to cover conduct that occurs after the birth of a child. And I think it is useful to look back at the statement of what the Ninth Circuit was doing in Spencer when they said the born-alive rule says that an infant who is born alive and dies as a result of fetal injuries is a human being. And when Congress enacted the statutory definition of human being, they could have included unborn children. They could have included some articulation like that, but they didn't. And there appears, I think this is a situation where there does appear to be some ambiguity over whether this definition is intended to reach pre-birth conduct. And looking at the legislative history of the 2002 definition of human being, that makes clear that Congress is drawing a bright line between pre-birth conduct and conduct that takes place the killing or criminal neglect of a child at any point after they're born alive. That this statute takes effect upon the live birth of an infant. So I think if there is any ambiguity over what that definition of human is being with respect to the common law born-alive rule, which again our position is that it has never been adopted in federal courts to include a mother's prenatal conduct, but if there's any ambiguity over what that statute is doing with respect to that common law rule, the legislative history says we're drawing the line at post-birth conduct. Now I think you're, maybe I'm wrong about this, and maybe I need a little help to follow your argument, but I think you're relying on the 2004 law. And what I'm trying to figure out is under your view, under what you're articulating to us now, what does the 2002 Federal Dictionary Act change mean? What did it do? In your view, what is the meaning of that statute and when does it apply? Very basic question. Just kind of go back to the basics. The 2002 definition says that a human being, a person, an individual, a child, includes any infant who has been born alive at any stage of development. It provides a definition for what it means to be born alive, and that's not limited to any long-term likelihood of survival or age of gestation or anything like that. But it is providing a statutory definition of human being, and I think at that point, once there's a statutory definition, we're done with the common law doctrine. But Spencer, all Spencer said was that in that case the infant had been born and therefore was a human being when he or she died. That's not inconsistent, is it, with the 2002 law? I think it did say that, but it also said a human being includes an infant who is born alive who later dies as a result of fetal injuries. And I think— Well, what's wrong with that? Why is the 2002 statute inconsistent with that? I think if there's any doubt, then we look at that legislative history and it says that this definition takes effect at the birth of the infant. And again, there is a difference with the third party where the third— Well, can you address that? You say the common law. I wasn't sure whether you meant you thought the common law made a distinction between third party and mother or whether you thought the federal statute in 1908 adopted something different than the common law. What is your view on that? I think the common law did make a distinction between a mother's prenatal conduct and a third party's conduct. And the reason that that distinction would make sense in the context of the involuntary manslaughter statute or another generally applicable statute is that a third party's conduct is against a human being at the time. That human being is the pregnant woman. But a woman's prenatal conduct, her purely prenatal conduct, is not against a human being as that term is defined by statute at the time. So that would be one reason why a woman might be treated differently under the common law or by the statute. Do you have any common law authority for the distinction? Have you researched the common law? I have researched the common law. It wasn't really in the briefs, I didn't think. There really isn't, frankly, much on a woman's liability for prenatal conduct. And you could read that to say that that means that the common law doesn't cover that conduct. I think in order to apply a federal criminal statute against a criminal defendant, it at least needs to be clear that that was the state of the common law and that Congress has incorporated either by statute or just by the way that the common law worked when we enacted statutes, that Congress has incorporated that rule as it applies to a mother's prenatal conduct. Well, let me help you a little bit. You're right, there's not a lot out there on the mother, but when I used to teach criminal law and the born-alive rule, the legal fiction underlying the born-alive rule, is that homicide, unlike many other crimes, is a result of crime. And I think the government's brief makes this point. It's only complete when the death occurs, no matter when the acts occur. It's unlike kidnapping like in Montgomery and other crimes that we've looked at. And so when the crime is completed, you determine whether or not the victim was a human being. And here, because the child was born alive and died while the child was alive, that's what the born-alive rule is all about. And I guess I'm trying to figure out. To me, the 2002 Act says exactly what I just said. And it certainly does not abrogate the common law. If anything, it supports the common law. So what am I missing here? I mean, I just can't kind of get my arms around where you're going with your argument. I'm not sure if this answers the particular question you're asking. Sure. I mean, it's a compound question, and I apologize for that. I do want to address, first part, the crime of consequences doctrine. Sure, that would be helpful. We are aware of those cases. We have reviewed those. The rationale of those cases is it does say that a homicide isn't complete and can't be charged until there is a death. But those cases say that this is a composite crime, meaning it is the conduct and the death. And you have to have both to make the offense. And so our position is that when you're interpreting a federal criminal statute, you need to make sure the statute applies in all respects at the time of the conduct, not just at the time of the death. What's your authority? Do you have any authority that says that, I mean, the born-alive rule was nearly a unanimous rule in state jurisdictions? I mean, there might have been a few that didn't adhere to it, but it was overwhelming, more than 90% of the jurisdictions. Are there any cases, state cases, that make the distinction that you're drawing, where if the conduct that causes the harm preceded the birth, that somehow that's important, too, in determining homicide, whether somebody committed a homicide? Not as a matter of common law. There is the Ashley case from Florida that has the broad statement that, look, the best we can say is that a woman, based on her prenatal conduct, cannot be charged under the born-alive rule. And then there's also a Hawaii case, Iwoki, I believe is how it is said, and that case says that, as a matter of statutory interpretation, when in doubt, you need to look and make sure that the statute applies at the time of the person's conduct, at the time of the act, not just at the time of the consequences or the time of the death. Well, let me make sure I understand. Can you, or is there statutory language in one of these statutes that we've been talking about? The manslaughter statute or the 2002 act. Can you point to language, statutory language, that supports your view? I can. I guess I would go back to where I started, which is that manslaughter is a killing. It is the commission of a lawful act in an unlawful manner of a human being. And at the time of the commission, there isn't a human being victim, as that term was defined by statute. And then I think our position is that 1841, although it isn't the statute charged here, does have a role to play in that Congress in that statute says, we're covering conduct that occurs or that causes death or bodily injury to a child who is in utero at the time the conduct takes place. Okay, now that's what I'm asking about. That phrase you just used, at the time the conduct took place, that's not in any of the statutes. That's not in? That kind of distinction is not set forth. Congress didn't place that kind of cutoff date or limitation in any of these laws, did it? In 1112, the involuntary manslaughter statute, it does not. But you think the Federal Dictionary Act, the 2002 law does it? That's what I understood you to be saying, making that distinction. Am I wrong about that? Just to follow up, I just want to be clear. I mean, I can't claim that that has the terms at the time the conduct takes place. I can say if there's any ambiguity to that, we can go to the legislative history, and that's pretty clear, that for whatever reason, Congress has made the policy decision, this takes effect at the time of birth. And therefore, things that happen pre-birth don't meet this definition. Things that happen after birth do. The killing or criminal neglect of a child once it is born. And I did want to kind of pick up on that 1841 point again. That, again, the history of that is clear, and the text of that, I think, is clear. And if there's any ambiguity, the history makes it clear that that, at this point, after the 2004 statute, there is no common law born alive rule. Or it has been replaced by that statute. That a third party's conduct gets charged under this statute because it covers conduct that occurs when the child is in utero. And that, otherwise, you have this approach where we're in a situation like we're in here, where we're trying to figure out parsing based on the time of the outcome and figuring out what exactly is the time of the outcome to decide whether a person is liable or not. And Congress said we don't like the limitations that the born alive rule creates for third parties. And so we're going to dismantle it, we've eliminated it, and we're replacing it. So our position here today is that the common law born alive rule just doesn't have a role to play in federal statutes. Well, suppose we didn't accept that 1841 modified the manslaughter statute. And suppose, though, that there was English common law to distinguish in between the mother and the third party or there's some common law basis for that distinction. What do you say about Mr. Parson's position that the Congress overrode any such distinction in the manslaughter statute versus the position that it adopted the common law, which arguably is what Spencer was suggesting? I would disagree that Congress rejected any immunities that existed at common law. I'm sorry, I'm not sure I understood the question. Well, I don't know if it would be an immunity or just some kind of distinction between mother and third party that was reflected in the common law, but I think the government's position was that because there's no textual distinction in the statute, if there were such a distinction in the common law, it's been superseded. But we have Spencer saying Congress was intending to adopt the common law. I just wondered if you had a view on that, if you've thought about that. I don't think there's anything in Section 8 that tells us that, if anything, I think at best for the government, at worst for us, it's codifying the born alive rule as it exists at the time. And if women were never able to be charged, if the common law born alive rule just didn't reach a mother's prenatal conduct, then Congress wouldn't have to say, and we're getting rid of or we're keeping this limitation, that if this was intended to just codify the born alive rule and the status of that rule is that this is about third parties, not women, I don't think Congress would have to do anything different. I understand that. I guess the question is how do we tell whether Congress was codifying a common law rule or creating a new statutory rule. I think you would have to go to the history, the purpose, the policy behind the statute. Is there a canon out there? Is there when they abrogate the common law, I know in state court, to abrogate the common law you have to be clear about it, clear and manifest language or whatever. Is there any such canon under federal criminal law, I guess is my point. I really don't know if there's a particular rule about whether just enacting a statute would be enough. That's defining a term that the common law was addressing or not. What about Montgomery? Montgomery actually, you've got to read it broadly, but it may seem to be helpful to you, and I'm wondering what your interpretation of Montgomery is. We definitely think that ruling in Ms. Flute's favor is consistent with a Montgomery case. I think Montgomery does involve factual and statutory differences that just aren't present here, but at the core of Montgomery, I guess with the question being is there a sequential timing requirement for a kidnapping to result from the death? Does the death have to happen after the kidnapping or not? And the answer was no, there's no sequential timing requirement because the word results is broad. But in order to get to that question, the court had to say, had to acknowledge that before the child was born, the child was not covered by the kidnapping statute. In other words, the unborn child was not a person within the meaning of the federal code because that does have the same definition as human being in Section 8. And so I think that what's helpful for Montgomery is helpful for our position. And that supports your view, particularly as to a conduct crime. The only question is whether homicide is different because it's a results crime, and we've already discussed that. Do you have anything further? I do not. We would just ask that the court affirm the order dismissing the indictment. Thank you. All right. Thank you for your argument. Mr. Parsons, we'll hear from you in rebuttal. Thank you, Your Honor. There is no text that limits the involuntary manslaughter statute to pre-birth conduct. There's nothing in the text that has a distinction as to when the act that resulted in the killing began. And this is a continuous crime when you're talking about drug toxicity. The snorting of the hydrocodone and the downing of the other medications occurred pre-birth, and those drugs then operated eventually to kill this child four hours after he was born. And so without the killing, there is no crime. There's no involuntary manslaughter. And, of course, that's why there can't be an attempted involuntary manslaughter, because you can't attempt to involuntarily kill someone. It's, by its own definition, unintentional. It's grossly negligent, and you had fair warning that it could produce death, but it is not a crime until there's a killing. Suppose, though, and that brings up an interesting theoretical question, suppose that this was an intentional crime. Suppose she intended to kill the child. She didn't want the child. And she started ingesting these drugs while the baby was in utero. Baby's born, no problems with the baby. Could the United States charge attempted murder under those circumstances? I don't have the murder statute in front of me, but I think if the child was born alive, that's quite possible under our argument here, but I don't have the text of a federal murder statute in front of me. Of course, it couldn't be manslaughter, involuntary manslaughter, because it was with malice in the earlier scenario. Right. The reason why I ask is because the attempt might be different, because that's a conduct crime versus a result crime. Right. You don't have to wait for the death. Right. But clearly with involuntary manslaughter, there is no crime without a death. The death, the killing, is the crime. And there is no distinction in the definition of a human being or person in Section 8 that addresses it all, draws a line, pre-birth conduct and post-birth conduct. That's a line that Congress needs to draw, and that's where the argument that this is not a crime should be addressed. What about Judge Karnman, you know, listed several potential scenarios that concerned him if he were to say this indictment could proceed, and there are some of the cases that have been cited that go through similar hypothetical scenarios, and your brief says, well, we don't have to worry about that because those aren't before us. Well, we might have to worry about it if the logic of what you're asking us to do would authorize all these scenarios. So would you like to address whether there's any limiting principle here that you might suggest or whether we would, in fact, be endorsing the various scenarios that Judge Karnman and other courts have suggested would follow? Yeah. The limiting principle, I think, is the state of mind in the statute. Extreme recklessness, gross negligence, involuntary, but knowing, knowledge that this will produce death, likely might produce death. That's the limiting principle. And the Slippery Soap argument is rebutted, as we point out in the footnote in the brief. This isn't not commonly charged. I mean, the Slippery Soap argument is defeated by the fact that By the discretion of the United States attorneys? Not the discretion of the United States attorneys, but by the confines of the statute. I think drinking caffeinated beverages could never qualify as involuntary manslaughter. I mean, I think that would never be charged, and it wouldn't be clear. Because it wouldn't harm the child? It doesn't evidence the state of mind that it might produce death. And I think that's the limiting principle. You mean because it wouldn't cause death or because it's not known that it would? Or what's your point there? I think both. Well, then it's not much of a case. If it wouldn't cause death, it's never going to. I think Judge Corman was talking about alcohol and chemotherapy and negligent driving. Yeah, and perhaps the best example might be drinking alcohol on a Friday night or several Friday nights. That eventually harms the baby. Yeah. They kill it. Those are the real scenarios, that he wasn't talking caffeine, as I recall. If you're downing two bottles of vodka at 38 weeks pregnant, I think that would evidence potentially a reckless state of mind. Ultimately, these are jury questions. Reckless driving, speeding, leading to an accident? Those are cases that may eventually have to be addressed. I think it's unlikely because I don't think those would be charged. But if they were charged, then a court would ultimately have to address those cases. Well, they would. I know, but the logic of your position, would it authorize prosecutions in those cases or not? I don't think, no, necessarily it would because when you're speeding, you're not necessarily on notice that what you're doing might produce death to the baby. I think that's too attenuated a connection, I think. I don't think that would be a case that would be charged. I don't think that, ultimately, of course, we all agree, that doesn't affect how this case should be resolved, a 38-week drug poisoning. We asked that the court would say that there would be no little difference in the speeding or the reckless driving situation between the baby in utero and the baby in the car seat. That could be argued, no, absolutely. I don't think this case calls for that . . . It's an argument that some would make. I'm sorry, Your Honor? It's an argument that some would make, and it goes to the idea that Judge Kornman's kind of possibilities here would not be out of the question. Now, the chemotherapy, that brings up a question of the lesser of two evil kind of situation, but the others perhaps would be possibilities. They perhaps would be, and that's why we do have United States attorneys make those decisions. Juries ultimately decide if the conduct qualifies, and that's our system. We're never going to have a voluntary manslaughter statute that lists all the different types of things that might qualify. It's a general intent crime, and conduct that rises to the level of extreme recklessness qualifies under the statute. I don't think that makes the statute vague or means it doesn't apply here. All right, thank you, Mr. Parsons. We ask the court reverse. Thank you, Your Honor. Thank you to both counsel for the arguments. The case is submitted. The court will file an opinion in due course. You may be excused, and Madam Clerk, please call the next case for argument.